IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 1, 2009

**DONALD THOMAS STAGNER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Hardeman County**
**No. 06-01-0291B     J. Weber McCraw, Judge**

_____

**No. W2008-00588-CCA-R3-PC  - Filed September 28, 2009**
_____

On November 3, 2006, the petitioner, Donald Thomas Stagner, pled guilty to aggravated burglary and theft over $500 and was sentenced as a Range I, standard offender to four years and one and one-half years, respectively.  The court ordered that the sentences would be served concurrently and suspended after ninety days.  On October 18, 2007, the petitioner sought post-conviction relief, asserting that his pleas of guilty were unknowing and that trial counsel was ineffective.  Following an evidentiary hearing, the post-conviction court denied relief by order entered on February 4, 2008.  The defendant filed his notice of appeal on March 13, 2008, and the State argues that the notice of appeal was untimely and, thus, this appeal should be dismissed.  Following our review, we affirm the dismissal of the petition for post-conviction relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the court, in which DAVID H. WELLES and CAMILLE R. MCMULLEN, JJ., joined.

Angela L. Jenkins-Hines, Jackson, Tennessee, for the appellant, Donald Thomas Stagner.

Robert E. Cooper, Jr., Attorney General and Reporter; Melissa Roberge, Assistant Attorney General; D. Michael Dunavant, District Attorney General; and Joe L. VanDyke, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**FACTS**

At the evidentiary hearing, the petitioner testified that, prior to his pleas of guilty, his trial attorney met with him only once and "told [him] that the D.A. was giving [him] a deal and that [he] should take it."  He said that he asked counsel for all "discovery materials" and that he would not have entered pleas of guilty if he "had known everything that I know now, that I had a right – I thought that I understood what was going on but I didn't."  He said that, although counsel explained the guilty pleas to him, he had not understood that he had the right to have his "sentencing imposed

by a jury." He said that his rights were "vaguely explained" to him, but not "individually" gone over with him, and that he "was basically told, 'Here's where you sign.'" He explained that he did not understand the sentences that were being imposed:

> I had two different cases. I had the violation out of McNairy County and then I had the new charge here, but since it was the same [j]udge in both counties, we took care of it both in one day. I had my – the rehab was explained to me on my probation violation and then I did my – the criminal case where I took my four years. The rehab was never a part of my four years.

He testified that he "thought [his] four [-year sentence] started after [he] got out of rehab." He explained why he left the rehabilitation program: "I was kicked out and I went back to my mother's house where I was living and I called my probation officer and told them that that's where I had returned to, was my mother's house[.]"

During cross-examination, the petitioner testified that he had not understood the guilty plea process: "I didn't understand a lot of this stuff until I got to prison where I could look in a legal library and see where the flaws were in my case. I didn't dispute anything that I've said."

Trial counsel testified that she had practiced law since 1985. She related what the petitioner told her about the burglary charge against him:

> He said that Wilson and Pipkin [the co-defendants] went in and that he stayed outside. He said that some DVDs, a cell phone, a digital camera, a checkbook, a necklace, some CDs and some other things were taken. He said that the [victim's] home was just through the woods from his house.

> He said that he was 22, Pipkin was 25 to 28, Wilson was 22. He didn't recall whose idea it was but he said he came to Mr. Pipkin's home and was talking about needing money and said he would be a lookout. He said that they had done meth a couple of weeks earlier and that Pipkin came out to his house and was going to pay him $50.00 to be a lookout. The plan was to get a lot more things than they got and that he ended up purchasing the necklace and the cell phone.

Counsel explained the circumstances which led to the petitioner's giving a statement to law enforcement officers:

> The [petitioner's] mother indicated they were going to take her to jail for the checkbook and I think at that point he agreed to go and talk with [an investigator]. He talked to [an investigator] and was advised that if he would help get the things back from the burglary that he would have help on the charges. He said he had the cell phone at his house and the rest of the things should have been at Mr. Pipkin's except the digital camera that he sold.

He said that they went to the Pipkin's home about 3:00 a.m. and found the things. He was held eight hours prior to being charged. [An investigator] did question him and he did give a written statement saying that he was the lookout in the burglary, that he had some of the property and knew where some of it was.

Counsel related that the petitioner had telephoned her on several occasions to say that he wished to plead guilty:

A. I have several messages, calls, from him saying when can he enter a plea –

Q. Phone messages?

A. Yes.

Q. Where he called your office?

A. Yes. Another one saying, "Let me know if I can take the plea," and while this was pending, he picked up two General Sessions escape charges and he had a probation violation from McNairy County where he was on probation for sexual battery of a seven year old child.

I went to McNairy County and handled that as part of – just to get rid of it as part of this and dealt with the escapes, and he was also on . . . misdemeanor probation . . . in Hardeman County. So I dealt with that as dealing with the probation violation and the escapes and . . . probation violation, that the agreement was he would go to long-term rehab, and he did so.

Q. And –

A. He had been in jail 82 days when we took the plea, which was four years at 30 percent, all suspended but 90 days, so he had eight days to do and then he was going to rehab.

Q. So rather than go to TDOC custody, he was offered the opportunity to go to rehab[?]

A. Yes.

Q. . . . Would you say that that complies with the offer from the investigators that "you'll be helped out on your sentence if you give the property back?"

A. Yes. And he was also going to testify against Mr. Pipkin. . . . [W]hen he entered his guilty plea on November 3rd of '06, the agreement was that he would testify

against Mr. Pipkin at trial, and while he was under oath he was asked questions and he stated that he had given a statement, that Wilson had pled guilty to the charge, that Pipkin was also in the house taking goods and all shared in the proceeds. He testified to that under oath and stated his willingness to testify against Mr. Pipkin, at the plea hearing.

Counsel explained that, in her view, the State's evidence against the petitioner was "very strong":

> I thought it was very strong and I thought he was an idiot if he didn't take this plea and let me deal with everything else and go to rehab. And he agreed also. I have a letter from him saying, ". . ., my mother has talked to someone that she works with about a halfway house and a rehab in Savannah. You told me I didn't have to worry about my charge of aggravated burglary and theft, that I was offered four years at 30 percent suspended to 90 days and 1.5 years at 30 percent suspended to 90 days." But then he mentions the probation violation . . . and talks about wanting to go to rehab. He completely understood what the situation was, and, as I said, he had been through the sexual battery in McNairy County. He knew the system.

During cross-examination, counsel said that she advised the petitioner of the evidence the State had produced to her and that he "begg[ed]" her, "Can't we get to court sooner[?]"

## ANALYSIS

On appeal, the petitioner argues that his pleas of guilty were unknowing and involuntary and that trial counsel was ineffective. The State disputes these claims. Additionally, the State argues that the petitioner's appeal was untimely. Pursuant to Rule 4, Tennessee Rules of Appellate Procedure, a notice of appeal shall be filed within thirty days after entry of the judgment from which an appeal is sought. In criminal proceedings, however, the notice is not jurisdictional. Accordingly, this court may review untimely appeals and determine whether the notice requirement should be waived. Tenn. R. App. P. 4. Thus, even though the petitioner's appeal was not timely filed, we will review his claims on their merits.

In the post-conviction court's written findings of fact and conclusions, the court accredited the testimony of trial counsel and discredited that of the petitioner:

> At the plea hearing the [petitioner] testified under oath. He testified that he went over the plea form, the waiver of a trial and waiver of appeal forms with his attorney and signed them. He testified he understood what he was doing. The plea form indicated that he would be facing three to six years on Aggravated Burglary and one to two years for Theft, that these sentences would run concurrently and that he would proceed as a Range I offender.

He was informed that his sentence would not be eligible for probation.

The [petitioner] was asked if he was satisfied with the representation of [trial counsel] and he stated he was. He testified he had enough time to meet with his attorney and discuss this case. The [petitioner] testified that no one had forced him to enter this plea of guilty, and that he did not have any questions about the proceeding.

Before the plea proceedings, [trial counsel] went over the same information with petitioner several times.

Petitioner stated that no one forced him to plead guilty.

The court found that the [petitioner] entered a plea as a standard offender.

At the post conviction hearing, [trial counsel] testified about the investigation done by her, the review of the State's discovery, and spoke to the State with regard to the evidence available for trial.

The petitioner . . . was called to testify. He testified that his counsel did not get discovery materials in this matter and therefore, he was not properly represented or given appropriate legal advice. However, considering the overwhelming evidence against the [petitioner,] including his statement and the testimony at the post conviction hearing about his defense, the Court believes his attorney negotiated the best deal possible.

The Court finds that the [petitioner] actually understood the significance and consequences of the particular decision to plea[d] guilty and the decision was not coerced. The [petitioner] was fully aware of the direct consequences of the plea. He was informed at the plea hearing of the sentence.

The Court accredits the testimony of [trial counsel].

The Court finds that [trial counsel] provided adequate assistance; [s]he met with petitioner and discussed the case, including possible sentences. The defense counsel successfully fought a greater sentence.

Petitioner failed to show any deficient performance by [trial counsel] or that he was prejudiced. The entry of a plea of guilty to avoid the risk of a greater sentence does not make a plea involuntary. . . . The State successfully examined the [petitioner] where[]in he acknowledged at the plea hearing that his plea of guilty was being entered freely, voluntarily, and intelligently.

-5-

A plea hearing is not a mere formality. It serves to insure that the defendant understands his rights and the terms of his plea. State v. Neal, 810 S.W.2d 131 [(Tenn. 1991)].

The Court finds that petitioner has failed to establish the factual allegations contained in his petition by clear and convincing evidence. Tenn. Code Ann. § 40-30-[1]10. The petitioner has not shown that (a) the services rendered by trial counsel were deficient and (b) the deficient performance was prejudicial. The petitioner has not shown that the services rendered or the advice given was below the range of competence demanded of attorneys in criminal cases. The petitioner has not shown that there is a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different.

The Court finds that the petitioner knowingly and voluntarily entered a plea, that [the petitioner] actually understood the significance and consequences of the plea and sentence. The Court finds that the petitioner was not coerced into entering a plea.

In order to determine the competence of counsel, Tennessee courts have applied standards developed in federal case law. See State v. Taylor, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (noting that the same standard for determining ineffective assistance of counsel that is applied in federal cases also applies in Tennessee). The United States Supreme Court articulated the standard in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984), which is widely accepted as the appropriate standard for all claims of a convicted petitioner that counsel's assistance was defective. The standard is firmly grounded in the belief that counsel plays a role that is "critical to the ability of the adversarial system to produce just results." Id. at 685, 104 S. Ct. at 2063. The Strickland standard is a two-prong test:

First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

Id. at 687, 104 S. Ct. at 2064. The Strickland Court further explained the meaning of "deficient performance" in the first prong of the test in the following way:

In any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances. . . . No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant.

-6-

Id. at 688-89, 104 S. Ct. at 2065. The petitioner must establish "that counsel's representation fell below an objective standard of reasonableness under prevailing professional norms." House v. State, 44 S.W.3d 508, 515 (Tenn. 2001) (citing Goad v. State, 938 S.W.2d 363, 369 (Tenn. 1996)).

As for the prejudice prong of the test, the Strickland Court stated: "The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694, 104 S. Ct. at 2068; see also Overton v. State, 874 S.W.2d 6, 11 (Tenn. 1994) (concluding that petitioner failed to establish that "there is a reasonable probability that, but for counsel's errors, the outcome of the proceedings would have been different").

Courts need not approach the Strickland test in a specific order or even "address both components of the inquiry if the defendant makes an insufficient showing on one." 466 U.S. at 697, 104 S. Ct. at 2069; see also Goad, 938 S.W.2d at 370 (stating that "failure to prove either deficiency or prejudice provides a sufficient basis to deny relief on the ineffective assistance claim").

By statute in Tennessee, the petitioner at a post-conviction relief hearing has the burden of proving the allegations of fact by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2006). A petition based on ineffective assistance of counsel is a single ground for relief, therefore all factual allegations must be presented in one claim. See Tenn. Code Ann. § 40-30-206(d).

We note that when post-conviction proceedings have included a full evidentiary hearing, as was true in this case, the trial judge's findings of fact and conclusions of law are given the effect and weight of a jury verdict, and this court is "bound by the trial judge's findings of fact unless we conclude that the evidence contained in the record preponderates against the judgment entered in the cause." Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). The reviewing court must indulge a strong presumption that the conduct of counsel falls within the range of reasonable professional assistance, see Strickland, 466 U.S. at 690, 104 S. Ct. at 2066, and may not second-guess the tactical and strategic choices made by trial counsel unless those choices were uninformed because of inadequate preparation. See Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982). The fact that a strategy or tactic failed or hurt the defense does not alone support the claim of ineffective assistance of counsel. See Thompson v. State, 958 S.W.2d 156, 165 (Tenn. Crim. App. 1997). Finally, a person charged with a criminal offense is not entitled to perfect representation. See Denton v. State, 945 S.W.2d 793, 796 (Tenn. Crim. App. 1996). As explained in State v. Burns, 6 S.W.3d 453, 462 (Tenn. 1999), "[c]onduct that is unreasonable under the facts of one case may be perfectly reasonable under the facts of another."

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, our Tennessee Supreme Court in Mackey required an affirmative showing

of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542.

A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05. If a plea is found to have been knowing and voluntary, the defendant waives any challenge of the offender classification or release eligibility. Pettus, 986 S.W.2d at 543.

The transcript of the submission hearing shows that the petitioner was questioned at length regarding his understanding of the process and his pleas of guilty. He showed no confusion or hesitation. At the evidentiary hearing on his post-conviction petition, his testimony was substantially contradicted by that of trial counsel as well as his responses to the court at the submission hearing. The post-conviction court accredited the testimony of trial counsel, and the record supports this determination that the petitioner failed to establish either that trial counsel was ineffective or that he was prejudiced thereby. Accordingly, we affirm the post-conviction court's dismissal of the petition.

## CONCLUSION

Based upon the foregoing authorities and analysis, we affirm the dismissal of the petition for post-conviction relief.

_____
ALAN E. GLENN, JUDGE